## ICHABOD T. WILLIAMS ET AL. *v.* BANK OF COMMERCE OF MEMPHIS ET AL.

1. FOREIGN CORPORATION.    *Void contract.    Consideration.    Restoring status.*

Although a note and trust-deed given by a foreign corporation to secure a loan be void in the state where made, because of a disregard by it of statutory requirements as to such corporations doing business in the state, it cannot repudiate its contract without restoring the *status quo* by returning the money borrowed. Though the contract be void, if it be one free from moral turpitude, the corporation is liable for the money received thereunder.

2. SAME.    *Void loan.    Consideration.    New note.*

Where such note and trust-deed were executed in Tennessee, the trust-deed covering land in this state, and afterwards, their invalidity being discovered, the parties come to this state and execute a new note and trust-deed, the equitable liability of the corporation for the money received by it under the invalid contract is sufficient consideration to support the new note and trust-deed, which, being good under the laws of this state, may be enforced here.

3. SAME.    *Note payable in Tennessee.    Validity.*

The mere fact that the foreign corporation executing such new notes in this state, makes them payable in Tennessee, does not render them void, since, in so doing, it is not doing business in that state, and, if it were, it would be merely promising by the note to do what, in a proper action, the courts of Tennessee would compel it to do.

4. INJUNCTION. *Trust-deed. Staying sale. Dissolution. Damages.* *Code* 1892, § 572.

   Section 572, code 1892, which allows damages at the rate of five per centum on the dissolution of an injunction to stay sales under deeds of trust or mortgages with power of sale, applies whether the injunction be sued out by a party to the instrument or by a stranger. If by the latter, the damages, when awarded, may be collected by execution.

5. SAME. *Statutory damages. When exclusive.*

   Where delay is the only damage sustained by the injunction, the damages on dissolution are limited to the per centum allowed by said statute, and in all cases where the statutory damages are claimed and allowed they are exclusive of all others.

FROM the chancery court of Bolivar county.
HON. W. R. TRIGG, Chancellor.
The opinion states the case.

*Moore & Jones,* for appellants.

As the Fischer & Burnett Lumber Company had not complied with the law of Tennessee in reference to foreign corporations, its contracts in that state are illegal and invalid. See *Lumber Co.* v. *Thomas,* 92 Tenn., 587. As to the power of a state to impose terms upon a foreign corporation, see *Lascher* v. *Stimson,* 33 Atlantic Rep., 552; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S., 727; *Bank* v. *Earle,* 13 Peters, 519.

The contention that the company was at least a *de facto* corporation with regard to the transaction in the state of Tennessee, if adopted, would act as a repeal of the statute. Such a construction has not been made in a like case. Moreover, there has been no sort of a compliance with the provisions of the law in Tennessee. It will not avail appellees to say that, in dealing with said company in its usual course of business, it acted in good faith, without notice that it was violating the law. The laws of the state are enforced without notice to the individuals, and must be known to all. *Pringle* v. *Phillips,* 5 Sandf. (N. Y.), 157. The Tennessee statute fixed the penalty upon parties contracting with a delinquent corporation. See *Lumber Co.* v. *Thomas, supra.*

Where there can be no civil right there can be no civil remedy, and there can be no legal remedy for that which is in itself illegal. *Bank* v. *Owens,* 2 Peters (U. S.), 527; 1 Parsons on Con., 381; Benjamin on Sales, 380.

No man ought to furnish another with the means of transgressing the law, knowing that he intends to make that use of it. Story's Conflict Laws, § 253; 1 Maule & S., 593; 3 B. & Ald., 179; 20 Wendell (N. Y.), 390; 12 Wall. (U. S.), 342, 349.

The contract being against public policy, the amount of the loan cannot be recovered. Anson on Con., 224; 29 N. H., 264; 17 B. Monroe, 352; 54 Ala., 154; 3 Denio, 226; 46 Iowa, 299.

The subsequent note and trust-deed were given in Mississippi, and are equally as infirm as the obligation that previously existed. *Brown* v. *Tarkington,* 3 Wall. (U. S.), 377; Addison on Con., 730; Anson on Con., 2 Am. Ed., 231, 260, 261.

The contract being void under the laws of Tennessee, cannot be enforced here. *Ivey* v. *Lalland,* 42 Miss., 444. The general rule is that a contract illegal where made, is void everywhere. 2 Parsons on Con., 570; 3 Am. & Eng. Enc. L., 506.

It was error to allow counsel fees as damages on dissolution of the injunction. Such damages cannot be separated from those which would have been incurred in any event in defense of the suit. There is nothing to show that the expense of the defense was increased by the fact that the injunction was granted. The injunction was merely ancillary to the main relief sought. See 66 Ill., 127; 85 *Ib.,* 323; 99 *Ib.,* 600; 23 Ohio, 264; 25 *Ib.,* 278; 25 Iowa, 48; 2 High on Injunction, § 1686; 86 Ky., 516; 81 Me., 313; 13 Oregon, 362.

It will be noted that this is not a contest between the lumber company and the beneficiaries under the trust-deed.

*T. B. Edgington*, on the same side,

Filed a lengthy brief, and, as to the questions decided by the court made the following points: Failure by the lumber company to comply with the laws of Tennessee made its contracts in that state illegal and void. The Tennessee statute. excluding foreign corporations from doing business until compliance with its requirements is valid. 2 Morawetz on Cor., 971; 5 Sawyer, 88; 6 Preg., 431.

Persons dealing with a corporation must take notice of its charter. 2 Morawetz on Cor., 591. Legislation is notice. *Ib.*, 592; 19 N. Y., 222; 41 Ga., 660.

Appellees had notice of the statute under the registration law, and also, especially, under the decisions of the supreme court in *Lumber Co.* v. *Thomas*, 92 Tenn., 587.

Moreover, the new deed of trust executed in Mississippi recites that a doubt as to the validity of the first trust-deed had arisen. It is evident that the parties went to Mississippi to evade the laws of Tennessee. They became confederates of the offending corporation.

The new notes, being payable in Tennessee, are governed by the laws of that state. Story on Conflict Laws, § 272; 2 Kent's Com., 459; Story on Prom. Notes, 159; *Ivey* v. *Lalland*, 42 Miss., 444; *Mortgage Co.* v. *Jefferson*, 69 *Ib.*, 770.

The new note and trust-deed were without any consideration, and were therefore void as to creditors of the maker and grantor. A transfer is voluntary when made in pursuance of an agreement which cannot be enforced. Bump. on Fraudulent Con., 249. An illegal consideration is no consideration. 38 N. H., 199; 50 Me., 248; 3 W. Va., 548.

A contract contrary to public policy will not be enforced at the suit of either party in law or in equity. 1 King's Dig., 1398; 4 Humph., 131; 4 Heisk., 204; 6 *Ib.*, 445. Subsequent renewal of an illegal contract does not remove the taint. 6 Cold., 35; 9 Heis., 455; 12 *Ib.*, 325.

Section 572, code 1892, is limited to injunctions filed by mortgagors or grantors of trust-deeds. It provides that the

damages shall be added to the debt and collected by a sale of
the property. This cannot be done except in cases where
the debtor himself, or one in privity with him, enjoins. In
this case, the injunction was obtained by a stranger to the
instrument.

*Calvin Perkins,* for appellees and cross-appellants.

The bill does not aver that either of the banks knew, when
they made the loans to the Fischer & Burnett Lumber Com-
pany, that it had not filed a copy of its charter with the secre-
tary of state, as required. This was not ignorance of law, but
ignorance of fact. Appellants misunderstand the meaning
and the effect of the decision in *Lumber Co.* v. *Thomas.* For
violation of the statute, the offending corporation in this
case cannot be fined exceeding $500, yet the banks who dealt
with it, and advanced their money without any notice that a
certain act had not been done by the borrower, and were
innocent of any intent to violate the law, are, it is claimed,
to be mulcted in the sum of $33,600. The case relied on
holds no such doctrine. It merely holds that the courts will
repel the guilty party, and that no rights can be predicated
on an illegal contract in favor of such party. See also *Ohio
Insurance Co.* v. *Insurance Co.,* 11 Humph., 1. On this sub-
ject we refer also to *Fritts* v. *Palmer,* 132 U. S., 282. The
court is being virtually asked by the complainants to confis-
cate appellees' property because another party to the contract
is under the ban of the statute.

The banks having made the loans, not being in *pari delicto*
with the lumber company, could have maintained an action
of assumpsit to recover the money paid by them. 52 Am.
Dec., 758; 103 U. S., 49.

When the lumber company executed the new deed of trust
and notes in Mississippi, it was merely securing the payment
of perfectly legal demands which could have been enforced
by an appropriate action either in Tennessee or in Mississippi.
Making the new notes payable in Tennessee was not trans-

acting business in that state.   A state statute forbidding such notes would be void.   113 U. S., 736.

On the question of the notes being executed in Mississippi and payable in Tennessee, see *Brown* v. *Freeland*, 36 Miss., 181; 91 U. S., 406; 12 R. I., 265.

There is absolutely no warrant for the contention that, under § 572, code 1892, the five per centum damages cannot be awarded because the injunction was sued out by another person than the grantor in the deed of trust.   *Burns* v. *Dreyfus*, 69 Miss., 211.

*Charles Scott*, on the same side.

Argued orally by *Fontaine Jones* and *T. B. Edgington*, for appellants, and *Calvin Perkins*, for appellees, cross-appellants.

COOPER, J., delivered the opinion of the court.

The appellants, who are creditors of the Fischer & Burnett Lumber Company, an incorporated company under the laws of this state, exhibited their bill in this cause in the chancery court of Bolivar county against the said Fischer & Burnett Lumber Company, and against the Bank of Commerce and the Continental National Bank of Memphis, Tennessee, and the Seaboard National Bank of New York, and against James A. Omberg and Charles F. M. Miles, and against other defendants who have no relation to the questions presented by this appeal.   The purpose of the bill is to cancel as fraudulent certain deeds of trust executed by the Fischer & Burnett Lumber Company to Omberg and Miles to secure the payment of certain notes to the other above-named defendants, and to subject the property thereby conveyed to the payment of complainants' demands.

By the laws of the state of Tennessee, corporations created under the laws of other states desiring to engage in business in that state, are required, before engaging therein, to file a copy of its charter with the secretary of state, and also to

cause an abstract of the same to be recorded in the office of
the register in the county in which it desires to carry on its
business, or to acquire or own property, and it is made un-
lawful for any foreign corporation to do, or attempt to do,
any business, or to own or acquire any property in that state,
without having first complied with the provisions of the law,
under a penalty of a fine of not less than one hundred nor
more than five hundred dollars, at the discretion of the jury.
Milliken & Vertrees' Laws of Tenn., §§ 1992–2003; Laws of
1891, p. 212.

The Fischer & Burnett Company, without having complied
with the law of Tennessee, opened an office in the city of
Memphis, in that state, and engaged in business there, in
which business it contracted debts to the Bank of Commerce
and to the Continental Bank.   The debt to the Seaboard
National Bank of New York originated by the Fischer &
Burnett Company discounting its notes to that bank in the
city of New York, and it does not appear that this bank had
any transactions with the company in the state of Tennessee
other than that referred to in the next paragraph of this
opinion.

On the twenty-fifth of May, 1893, the Fischer & Burnett
Lumber Company, in the city of Memphis, executed its
several promissory notes to the respective banks for the
amount it owed each, those in favor of the Bank of Com-
merce and the Continental Bank being payable in Memphis,
and that in favor of the Seaboard National Bank being pay-
able at its banking house in the city of New York; and, to
secure the payment of said notes, it executed, at said time and
place, a deed of trust to the defendants, Omberg and Miles,
whereby a large quantity of real and personal property in
the state of Mississippi was conveyed to said trustees, and
power to sell said property in the state of Mississippi was
conferred upon said trustees if default should be made in the
payment of the notes it secured.   After the execution of
these notes and the deed of trust, the creditors learned that

the Fischer & Burnett Company had not complied with the
law of the state of Tennessee, by filing its charter with the
secretary of state, and an abstract thereof with the register
of Shelby county, in which county the city of Memphis is
situated, and a doubt was entertained as to the validity of
the notes and deed of trust.  For the purpose of curing
this supposed defect, the proper officer of the Fischer &
Burnett Company came to Lake Cormorant, in this state,
and, on the twenty-seventh day of May, 1893, there executed
and delivered other notes and a deed of trust, of like tenor
as those made in Memphis on the twenty-fifth of said month.
Both deeds of trust were recorded in the proper offices in
this state.   On the third day of July, 1893, the complainants
exhibited their original bill, seeking to cancel the deeds of
trust as fraudulent, and afterwards, the trustees having ad-
vertised the lands for sale under the deed of date May 27, a
supplemental bill was filed by which an injunction was
prayed and obtained against the sale.   The defendants, in
vacation, moved for a dissolution of the injunction on bill,
answer and exhibits, and, upon the hearing, the injunction
was dissolved.   On the hearing the defendants suggested
damages.   The chancellor found, as a fact, that the value of
the property covered by the deed of trust was $30,000, it be-
ing of less value than the debts secured, and allowed dam-
ages as follows:  (1) Attorney's fees, $1,750;  (2) for one
day's services of trustee, Ailes, $25;  (3) for costs of re-
advertising property, $55;  (4) for services of night watch-
man to guard property during period of injunction, $85;
(5) hotel bill of trustees, $7.40.   Total, $1,922.40.

   From the decree dissolving the injunction and allowing
damages, the complainants appeal.

   The defendants asked the court to allow them damages of
five per cent. on the value of the property in addition to
those allowed, and from the decree disallowing the same,
they prosecute a cross-appeal.

   Upon the principal question, it is contended by appellants

71 Miss.—55

that the business transacted by the Fischer & Burnett Company in the state of Tennessee without having complied with the laws of that state, was an unlawful business, made such by the terms of the statute, and that neither that company nor any one dealing with it, could acquire any rights by virtue of a contract entered into in the course of such business; that the creditors of the company, becoming such in dealing with it while engaged in an unlawful business, acquired no right by the contracts, nor could they recover from the company the sums advanced to it, suing not upon the contract but for money *ex æquo et bono* due to them, wherefore they contend that the notes and deed of trust executed at Lake Cormorant in this state were not supported by any consideration, and, because they were not, that the conveyance was a voluntary one, and therefore fraudulent as against the creditors of the company. It is further argued that since the notes to the Bank of Commerce and the Continental Bank, though made in Mississippi, were payable in Memphis, they are to be treated as contracts made in the state of Tennessee, and that the courts of this state should, through comity, consider them as void.

In the construction of statutes of the character of that of the state of Tennessee—*i. e.*, statutes prohibiting or making unlawful an act, or declaring a penalty against it—the most conflicting conclusions have been reached by the courts of the various states, and sometimes by the same court, in reference to statutes apparently similar.

In *Bank* v. *Owens*, 2 Pet., 527, the charter of the bank provided that " the bank shall not be at liberty to purchase any public debt whatever, nor shall it take more than at the rate of six per centum per annum for or upon its loans or discounts." A rate of discount exceeding six per centum was reserved, and it was held that the contract was void, and no recovery could be had on the note.

In *Mining Co.* v. *Bank*, 96 U. S., 640, the bank had lent to the defendant more than one-tenth of its capital stock, in

violation of the twenty-ninth section of the act under which it was incorporated, and which declared that "the total liabilities to any association of any person, or of any company, corporation or firm, for money borrowed, including in the liabilities of a company or firm the liabilities of the several members thereof, shall at no time exceed one-tenth part of the amount of the capital stock of such association actually paid in." It was held that, though the plaintiff had violated its charter in making the loan, a recovery could be had.

In *Bank* v. *Matthews*, 90 U. S., it was held that, though the act under which the bank was incorporated prohibited it from accepting real estate as security for a loan to be made, yet that a mortgage executed to the bank in violation of the act was valid, and might be enforced by the bank; and to the same effect are *Bank* v. *Whitney*, 103 U. S., 99, and *Fritts* v. *Palmer*, 132 *Ib.*, 282.

It has been frequently held that the contracts of corporations made in states in which they were forbidden from doing business, or in violation of statutory provisions, were not enforcible at the suit of the corporation. *Bank* v. *Merrick*, 14 Mass., 321; *Bank* v. *Owens*, 2 Pet., 527; *Williams* v. *Cheney*, 3 Gray (Mass.), 215; *Ins. Co.* v. *Pursell*, 10 Allen (Mass.), 231; *Cin. Mut. Health Ass'n* v. *Rosenthal*, 55 Ill., 85; *Lumber Co.* v. *Thomas*, 92 Tenn., 587. And also that the contract was void, and could not be enforced by an innocent party who contracted with the delinquent.

But, whatever view may be taken of the effect of a statute prohibiting a foreign corporation from doing business in a state upon contracts entered into against its provisions, it cannot be that the delinquent corporation may repudiate the contract and retain the consideration received by it, especially when the other party is innocent and ignorant of the fact that the law has been violated. It would be a reproach to the law if the Fischer & Burnett Company, having received over thirty thousand dollars of the money of the defendant banks under the circumstances disclosed by this record, could

plead its own default in defense of suits brought on its con-
tracts, and yet hold the money by reason of the contracts.
If the contracts were invalid, and conferred no right of action
on the banks, they gave no right to the company to hold the
money, and, repudiating the contracts, the company, *ex æquo
et bono*, was liable to repay the money it had received—liable
not under or by virtue of the contracts, but by reason of the
fact that, there being no valid contract, it had received money·
which in good conscience it could not retain.   There is a
wide and marked distinction between transactions of the
character here involved and those involving moral turpitude,
the mere making of which is detrimental to the public
welfare or private morals.

In *Marble Co.* v. *Harvey*, 92 Tenn., 115, it was held that
the defense of *ultra vires* might be interposed by the corpo-
ration, although the contract had been fully executed by the
other party.   The court declined to pass upon the question
of its liability, if sued upon a *quantum meruit*, because the
question was not presented by the record, but it is evident
from the opinion that approval is given to the authorities by
which such right of recovery is upheld.

In *Ohio Life Insurance & Trust Co.* v. *The Merchants' In-
surance & Trust Co.*, 11 Humph., 1, the precise question was
involved and decided. ' The defendant, a corporation created
by the state of Tennessee, had entered into contracts beyond
its corporate power, and had received benefits therefrom.
. Being sued in equity, it defended upon the ground that it
had no power to make the contracts.   The court held that,
while the defendant was not liable on the contracts, relief
should be afforded to the complainant outside of them, saying:
" We are of opinion, therefore, that the complainant is not re-
pelled by reason of the illegality relied upon in defense, but
is entitled to relief, and that in granting it the court will
promote both the claims of private justice and the ends of
public policy.   It is to be observed, however, that the relief
is against the contract and not upon the contract; for we

have seen that, in the nature of things, the law cannot en-
force an illegal contract, although the parties be not *in pari
delicto*. But it is consistent with itself that the law shall
annul such contract, and place the parties in all respects in
*statu quo*."

It is, therefore, evident that the Fischer & Burnett Com-
pany would have been liable to the banks if it had been
sued in the courts of Tennessee, not upon its contracts, but
in an equitable action for the money it had received.

The notes and deed of trust executed by the company in this
state were, therefore, fully supported by the consideration of
the money it had received. We think it obvious that the va-
lidity of the notes secured by the deed of trust was not at all
impaired by reason of the fact that they were made payable in
the state of Tennessee—first, because in executing the notes
in this state, payable in the state of Tennessee, the Fischer
& Burnett Company were not doing business in the state of
Tennessee; and, secondly, because, if making the note had
been doing business, it would have been only promising to
do that which the courts of Tennessee would have compelled
the company to do if suit had been brought there.

The court below properly dissolved the injunction.

The remaining questions for decision are presented by the
appeal and cross-appeal from the decree allowing damages
on the dissolution of the injunction.

Section 572, code 1892, is as follows: "When an injunc-
tion, obtained to stay proceedings at law for money, shall be
dissolved, in whole or in part, damages at the rate of five per
centum shall be added to the judgment enjoined, or to so
much thereof as shall be found due, including the costs; and
the clerk of the chancery court shall certify such dissolution
to the clerk of the court in which the judgment was ren-
dered, who shall thereupon issue execution for the damages,
as well as for the original debt and costs. Damages at the
same rate shall be allowed upon the dissolution of injunc-
tions to stay sales under deeds of trust or mortgages with

power of sale; and such damages may be added to the debt
and collected by the sale of the property, or execution may
issue from the chancery court for the same, together with the
costs of suit, unless the value of the property the sale of
which was restrained, be less than the amount of the debt,
in which case the damages shall be computed on the value of
the property, to be ascertained and determined by the chan-
cellor; and in all cases, upon the dissolution of an injunction,
the damages may be ascertained by the court or chancellor,·
or upon a reference to a master, and proof, if necessary, and
decree therefor be made and execution be issued thereon."

The chancellor was of opinion that the damages provided
for by this law could be allowed only where an injunction
was sued out by the defendant to a judgment or the grantor
in a deed of trust or mortgage, being influenced by those
parts of the section which provide that the damages allowed
when the injunction was to stay proceedings at law should
be added to the debt and collected by execution, and that
those allowed upon dissolution of injunction to stay sales
under deeds of trust or mortgages with power of sale, "may
be added to the debt and collected by the sale of the prop-
erty."

The first clause of the section, we think, refers exclusively
to injunctions sued out by a party to the judgment. There
may be cases in which one not a party to a judgment may
sue out an injunction to stay proceedings thereon, but we
cannot now recall an instance in which it could be done.
One not a party to a judgment may, by injunction, prevent
his property from being subjected thereto, but this is not the
stay of proceedings meant by the statute, for in such case the
judgment is not stayed, but only a particular execution thereof.

But sales under deeds of trust or mortgages with power of
sale may be, and frequently are, stayed by injunction by
strangers to the deed, and the statute was enacted with ref-
erence to such injunctions, as well as those issued at the suit
of a party to the instrument. Its terms are broad enough

to include them, and the injury in either case to the creditor is the same. When the writ is issued at the suit of a party bound for the secured debt, the damages given may be added to the debt and collected by the sale authorized by the deed. But they may also be collected by execution, and that may be awarded as well against a stranger as against a party to the conveyance.

The statute was intended to provide for and limit the damages allowable in the cases to which it applies. Ordinarily, the injury sustained by the party interrupted in the collection of his debt consists of the delay occasioned and the costs incident to the defense of his cause. For such cases and for such injury the law has provided a fixed rule by which the damages may be ascertained, to wit: By giving a per centum certain of the collection which would have been made but for the issuance of the injunction. There may be cases, exceptional in their circumstances, in which, by reason of change in the condition of the property or the expense incident to its care and preservation during the pendency of the injunction, other and different damages should be allowed. But when one claims and receives the damages allowed by the statute, he cannot receive, in addition thereto, other damages, to be ascertained by reference to other considerations. Those provided by the code are exclusive when allowed. We do not decide that one having a right to damages may, by his own choice, determine whether he will accept the damages fixed by the statute or will elect to have ascertained the real injury he has suffered. The statute, as we have said, was intended to provide fixed damages for those cases in which delay only is the injury sustained; and in such cases the defendant is confined to the damages it provides. Exceptional cases may arise to which the statute may not apply, and in these the actual damages sustained would be allowed; but in such instances the per centum given by the code would not be added to the sum awarded as actual damages.

The court should have allowed as damages five per cent. on the value of the property, it being less than the debt secured. This value was found by the chancellor to be $30,000, on which five per cent. ($1,500) should have been allowed as the total sum to which the defendants were entitled.

The decree dissolving the injunction is sustained; the decree allowing damages is reversed, and a decree will be entered here for the sum of $1,500; costs of appeal to be divided equally between the parties.

*Reversed, and decree here.*