## E. H. MITCHELL v. C. W. WOOD et al.

1. FEUDAL PRINCIPLES.—Statement by the court of the principles whereon lands were not generally liable to execution at common law.

2. JUDGMENT LIENS.—Judgment liens are statutory, and can be enforced only according to statute; at common law the judgment creditor could have satisfaction out of only the goods and chattels and present profits of the lands of the debtor; and the judgment lien did not bind personalty until the execution was delivered to the sheriff.

3. STATUTORY MODIFICATIONS.—Historical reference *per curiam* to statutory regulations in England and in this state.

4. ENROLLMENT.—The enrollment act was to protect purchasers at sheriffs' sales by applying proceeds to the oldest enrolled judgment.

5. CONSTRUCTION.—The words "purchasers from, and mortgagees of, the judgment debtor," in the enrollment act, means all who claim by subsequent conveyance from the judgment debtor, as a common source of title; whether by sub-vendee or more remote purchasers.

APPEAL from the chancery court of Madison county. YOUNG, Chancellor.

The opinion of the court contains a sufficient statement of the facts of the case.

*J. A. P. Campbell*, for appellant,

Filed an elaborate written argument, in which he contended that the doctrine sought to be established in Stevens v. Mangum, 27 Miss., that "the lien of a judgment extends only to the property of the defendant whilst it is owned by him or by a purchaser from him, is inconsistent with the law as laid down in the Code of 1857, and that under the Code of 1857, p. 524, art. 261, the lien · follows the property and attaches in the hands of a sub-purchaser or sub-vendee.

*John Handy*, for appellees,

Insisted that a judgment lien attaches to the property ,of a defendant only when owned by him or transferred to a vendee, and that a judgment is not a lien upon property in the hands of a second purchaser for value, citing Stevens v. Magum, 27 Miss. 481.

PEYTON, C. J.:

The record in this case shows, that Elizabeth H. Mitchell recovered a judgment in the circuit court of Madison county, on the 26th day of October 1860, against A. S. Mitchell and Robert M. Latimer, for the sum of $1,001.45, and that said judgment was duly enrolled on the judgment roll of the circuit court aforesaid, within thirty days from the date of the rendition thereof.

And that on the 17th day of September, 1861, the said A. S. Mitchell, in conjunction with his wife, for valuable consideration, conveyed certain real estate, situate in said county, owned by him at the time of the rendition of said judgment and enrollment thereof, to one John H. Cheatham, who conveyed the same for valuable consideration to Elizabeth T. McKnight, on the 4th day of June, 1862, and that on the 2d day of September, 1863, the said Elizabeth T. McKnight, for valuable condsideration conveyed the same real estate to Charles W. Wood and James McFarland, who filed their bill for an injunction against the said E. H. Mitchell and the sheriff of said county, restraining them from selling the said property which had been levied on by the sheriff of said county, by virtue of an execution emanating from said judgment, on the ground that the lien of said judgment had ceased to exist on the said real estate in the hands of the complainants.

Upon the final hearing of the cause, upon bill, answer and exhibits, the court decreed a perpetuation of the injunction, which had been granted in this case; hence the cause comes to this court by appeal.

There is but one question presented for our decision, and that is, does the vendee of a purchaser from the judgment debtor, or any more remote purchaser, take the property discharged from the lien of the judgment. The solution of this question necessarily involves a construction of article 261 of the Revised Code of 1857,

which provides that "all judgments and decrees, so enrolled, shall be a lien upon and bind all the property of the defendant or defendants within the county where so enrolled, from the rendition thereof, and shall have priority according to order of such enrollment, in favor of the judgment creditor, his representatives or assigns, against the judgment debtor or debtors, his, her or their representatives, and purchasers or mortgagees from said judgment debtor or debtors." Rev. Code, 524.

Upon the feudal principle, that the connection between lord and tenant shall not be destroyed, lands were, in general, not liable to be taken in execution at the common law. But in case of a debt to the king, it was allowed by the common law of England, for him to take possession of the lands of his debtor till the debt was paid: for, being the grand superior and ultimate proprietor of all landed estates, he might seize the lands into his own hands, if anything was owing from the vassal; and he could not be said to be defrauded of the services of his vassal, when the ouster of the vassal proceeded from his own command.

Judgments are statutory liens, and can only be enforced against the property of the debtor, in accordance with legislative provision.

By the common law a judgment creditor could only have satisfaction of the goods, chattels and present profits of the lands of his debtor, until the statute of Westm. 2, 13 Edw. I, chap. 18, gave him the writ of *eleget*, by which, upon a deficiency of the goods and chattels, one-half of the freehold lands, which the debtor had at the time of the judgment given, are delivered to the plaintiff, to hold, till out of the rents and profits thereof the debt be levied, or till the defendant's interest be expired. And under the old English law, judgments did not bind the personal property of the defendant till execution had been taken out upon them and delivered to the sheriff.

It is contended by the counsel for the appellees, that the judgment loses its lien, when the property is conveyed for valuable consideration to a sub-vendee of the judgment debtor, or to any more remote purchaser. And in support of this interpretation, we are referred to the case of Stevens v. Mangum, 27 Miss. 481. With respect to this case, it is sufficient to say, that that decision was made under the statute of 1844, which was couched in language different from that employed in the code, which we are now for the first time called upon to construe.

Before the enrollment law was passed, the statute of 1824 made judgments a lien upon on all the property of the judgment debtor, real and personal, from the rendition thereof. And under that statute, it has been held by our predecessors, that a judgment is a lien on all the property of the defendant from the time it is rendered, and that a lien fairly acquired, cannot be destroyed in favor of one having notice of that lien, unless it be by some act of the party in whose favor it exists. The judgment is not only a lien, but it is a lien of record, which is notice to every one. On what principle is it, then, that such a lien could be divested in favor of one who knew of its existence? Andrew v. Wilkes, 6 How. (Miss.) 554, 563.

The same doctrine is enunciated in the case of Phillips v. Lane, 4 How. (Miss.) 122. In that case Phillips sold the negroes in question, to Sanderson, who sold to Lane, the plaintiff below. At the time of the sale there was a judgment against Phillips which bound the negroes. Both Sanderson and Lane were, therefore, purchasers with full notice of the incumbrance. The property in the hands of Lane, the sub-vendee of Phillips, the judgment debtor, was liable, beyond question, the court say, to be taken by the sheriff on an execution emanating from the judgment against Phillips. Lane held the property subject to an incumbrance which could be legally

enforced at any time, and had purchased under a knowledge of its existence.

Under the act of 1824, the title of purchasers under junior judgments was liable to be defeated by a levy and sale of the same property under elder judgments. To protect purchasers at sheriffs' sales, and at the same time secure the rights of judgment creditors, the enrollment law under consideration was passed, by which the purchaser at the sheriff's sale took the property divested of the lien of the prior judgment, and that judgment creditor shall receive the proceeds of the sale, whose judgment shall have priority according to the order of enrollment.

Since the enrollment law, as well as before, all judgments and decrees, when enrolled, are a lien upon and bind all the property of the defendants within the county where they are so enrolled, from the rendition thereof.

It never could have been in the contemplation of the legislature to enable the judgment debtor to defeat the claim of his judgment creditor by alienation of his property, after judgment. Such a construction as would produce such results ought not to be favored by the courts, unless the language of the law, according to well settled principles of construction, requires it. In the case before referred to, of Andrews v. Wilkes, the court say : " It is true that courts may look to the intention of the legislature and the design of a statute, and may therefore construe it according to its spirit, although it may, in some measure, seem to conflict with the letter of the statute." We think that a just construction of the act under consideration requires us to say that the words "purchasers and mortgagees from said judgment debtor or debtors" mean all those who claim by subsequent conveyance from the judgment debtor as a common source of title, whether they be sub-vendees or more remote purchasers from him. Those terms mean

all those who derive their title through him, and consequently take the property subject to the liens of the judgments against the judgment debtor, of which they have constructive notice by the record of the judgments and enrollment thereof.

The decree must, therefore, be reversed, the injunction dissolved and the bill dismissed.