## DOTY *v.* ENTERPRISE TIMBER CO.

[75 South. 602, Division B.]

1. EXECUTION. *Right of judgment creditor as against claimant. Sale of property at instance of senior creditor.*

   Where a valid judgment was recovered and duly enrolled against persons who owned land in the county, on which they had given a deed of trust securing an indebtedness previous to the rendition of the judgment, and execution was duly levied on timber cut from the land by the judgment debtor and sold at private sale, at the instance of the holder of the trust deed to the claimant in execution, in such case the judgment creditor was entitled to the timber as against the claimant in execution, since if the latter had any rights, they were equitable and claimant's only right, if any, was to have the holder of the trust deed transfer to it the prior lien evidenced by the trust deed, and to be subrogated to the lien thereof in preference to the junior lien of the judgment creditor, and the enforcement of such right could only be had in a court of equity.

2. SUBROGATION. *Parties to action.*

   The right of subrogation, being equitable in its nature, cannot be enforced in proceedings to which those whose equities are affected are not parties. Creditors to whose rights a party seeks to be subrogated are necessary parties to an action to obtain such subrogation.

APPEAL from the circuit court of Attala county.

HON. E. V. HUGHSTON, Special Judge.

Levy of execution by L. H. Doty wherein the Enterprise Timber Company was claimant. From a judgment for claimant, plaintiff in execution appeals.

The facts are fully stated in the opinion of the court.

*George L. Teat,* for appellant.

It being conceded by all the parties hereto, that the judgment, execution, and levy were in all things legal and valid; the only points of inquiry presented by this appeal, are briefly as follows: 1. Was the judgment of appellant, after its enrollment a lien upon the property herein levied upon? 2. By the simple process of paying to the Senior Lienholder Kelly Bank, if the judgment was a lien the purchase price, did the claimant acquire a title to this property free of the judgment lien?

Taking up the points of inquiry in the order in which they are made, brings us to a discussion of section 819 of the Code, which said section of the Code is in words and figures as follows: "A judgment so enrolled, shall be a lien upon and bind all the property of the defendant within the county where so enrolled from the rendition thereof, and shall have priority according to the order of such enrollment, in favor of the judgment creditor, his representatives or assigns, against the judgment debtor, and all persons claiming the property under him after the rendition of the judgment; and a judgment shall not be a lien on any property of the defendant thereto, unless the same be enrolled; but in counties having two judical districts, a judgment shall operate as a lien only in the district in which it is enrolled."

It will be observed from the agreed statement of facts that the property herein levied upon, was owned and in the possession of the judgment debtor on the date of the enrollment of the judgment; that it was purchased by

the claimant from the judgment debtor and by a private voluntary sale, and as will be observed from the statute copied *supra,* this property was burdened by the judgment lien when said purchase was made. This lien having attached, it could not be defeated by any act of the judgment debtor. It binds the property even in the hands of remote subvendees. *Mitchell* v. *Wood,* 47 Miss. 231; *Heron* v. *Walker,* 69 Miss. 707.

The only possible object of enrollment of such judgments is the protection of judgment creditors against a sale by the judgment debtor of his propery, and in addition thereto the enrollment thereof, if a protection of would-be purchasers. In this case, the claimant purchased with full notice of the junior judgment lien. As was said by the supreme court in the case of *Josselyn* v. *Stone,* 28 Miss. 753. ''The object of the enrollment is to protect the rights of persons who should become purchasers.''

From the tenor of the defense interposed by the claimant in the court below, and from the wording of the judgment rendered by the trial court, it seems to be conceded that the judgment of appellant was a lien upon the property levied upon, and should have been enforced, but for the fact that the purchase price paid therefore, was applied to the mortgage debt, or to the prior deed of trust. In other words, it seems from the wording of this judgment, that the trial court was of the opinion that there was a kind of subrogation or substitution brought about when the money that was paid for the timber, was credited upon this prior deed of trust.

When we consider the essential elements of subrogation, the lack of application thereof to the case at bar is made so plain that we feel that it is but a waste of time of this court to go into a discussion thereof, yet, lest we be be misunderstood we ask the indulgence of this court for the purpose of presenting the elementary principles that govern the application of this doctrine.

In 37 Cyc., page 363, subrogation is defined as follows: "A. In general, subrogation is the substitution of another person in the place of the creditor, so that the person in whose favor it is exercised succeeds to the right of the creditor in relation to the debt."

It is manifest from the judgment of the trial court, the case, or the decision of the case, was made to turn upon some supposed right acquired by the claimant when his money was applied to the debt due under the deed of trust, for in the course of said judgment, it is said: "That C. C. Kelley Banking Company held a prior lien thereon by virtue of a deed of trust executed by defendants and that proceeds of the said logs were applied to the debts secured by said deed of trust, and that plaintiff in execution failed to show that said logs brought an inadequate price."

Therefore, the application of the money to the trust deed was the controlling fact with the learned special judge, and this application of the purchase money, is bound to have had either one of two results, viz; absolutely extinguishment of the deed of trust as to this property, or an assignment of deed of trust or subrogation of the claimant to the rights of the Kelly Bank.

It will be remembered here that the claimant Timber Company made a contract for the purchase of this timber with the judgment debtor, and that under this contract of purchase, his liability therefor was primary. It was not forced to buy this timber, and it owed the judgment debtor no moral obligation to pay this deed of trust off, nor did it pay the secured debt named in the deed of trust.

In 37 Cyc., on page 374, it is said: "D. Subrogation is allowed only in favor of one who, under some duty or compulsion, legal, or moral, pays the debt of another; and not in favor of him who pays a debt in performance of his own covenants, for the right of subrogation never follows an actually primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in

one claiming under him against one who is secondarily liable, or not liable at all.'' See also Sec. D, page 375, of same work.

''Subrogation is not a universal remedy for parties who have lost their money. It has its sphere of relief plainly limited by its nature; and before subrogation can be decreed, the facts on which it arises must be distinctly and appropriately alleged and shown, and the equity plainly appear, and the complainant to enforce a right acquired by subrogation should state the facts which give rise to the right claimed. The issue of subrogation must be pleaded, and the subrogee who, on paying the debt, is entitled to be subrogated to the rights of plaintiff, must ask for such relief in his answer.'' 37 Cyc. pages 388, 390.

We desire to call the attention of the court to the very extensive annotations found in Cyc. supporting the quotations, *supra,* among which will be found cases from the supreme court of Mississippi. But due to the fact as mentioned above, the lack of application of this doctrine is so manifest that we will not further cite authorities here.

*J. A. Teat,* for appellee.

The contention made by the counsel for plaintiff, is reduced to the single proposition that plaintiff in judgment, H. L. Doty, had the right to demand the sale to be made by the trustee as prescribed in the trust deed. The contention is manifestly unsound and untenable, because Doty, was not a party to the trust deed; he had no rights in and to the trust deed and since the trustee and his function in the trust deed was wholly a creation of the parties to the trust deed, and since the sole purpose of having a trustee at all is for the protection of the parties to the trust deed, Doty could have nothing whatever to do with directing the trustee or even demanding that he do anything, and the only party who could demand that

he should act at all, would be one of the parties to the deed of trust; and since they, by mutual agreement, did only what the trust could do, that is, to sell the property at its true value and this must be assumed because there is no complaint to the contrary the trustee's action in selling it himself could have added nothing whatever either as to the validity of the sale or transfer of title free of incumbrances.

If the judgment creditor Doty had desired to avail himself of his only legal right in the premises he should have tendered to the Kelly Bank the full amount of the trust deed and been subrogated to the right of the Kelly Bank to have the trustee foreclose and he could then have levied his execution on any overplus. This the plaintiff did not do, but contends that the sale as above mentioned operated as a release of the mortgage upon the timber. The facts in the record do not by any means warrant this conclusion. The language in the statement of facts is as follows: "That the claimant, the Enterprise Timber Company, purchased said logs through the said C. C. Kelly Banking Company from the Kosciusko Industrial College and P. H. Thompson by private sale; that the purchase price of said logs, four hundred and fifty dollars, was paid by the Enterprise Timber Company to the C. C. Kelly Banking Company prior to the levy of said execution and by agreement with the Kosciusko Industrial College and said P. H. Thompson was applied on the debt due said Kelly Bank, which debt was secured by said trust deed as mentioned above."

This transaction is one of the ordinary methods in common use. The banks of this country that take mortgages upon live stock and crops universally adopt the rule of selling the cotton to merchants or brokers by consent of the grantor, and credit his debt with the purchase price thereof without the intervening action of a trustee. Likewise the sale of live stock and other personal property, and the title to same is not affected by judgment

lines.   Indeed it would be a great hardship to hold that the title could not pass free of liens by a sale and delivery of same by and with the consent of grantor and grantee made in good faith to reduce the secured debt by a mortgage and to hold that the expense and delay necessary for the trustee to act, should be required, and that the trustee in person should sell such property according to the terms of the instrument.

These empty formalities are of no consequence and have no place in the busy affairs of grantor and grantee when they can readily dispatch their business to much better advantage.   The second lienor or creditor cannot complain of the acts of grantor and grantee so long as the same are in good faith as is shown by this record.

Counsel for the plaintiff belabors himself about the law of subrogation and misconceives in a large measure the act and intention of the parties in this case.

Should the sale be construed to have been made by the bank for the benefit of the grantor without his knowledge or consent, then the doctrine of subrogation would apply, but as this is not the fact and is not consistent with the spirit or the acts constituting the sale of the timber to the claimant, we do not deem it necessary to elaborate.

Stevens, J., delivered the opinion of the court.

Appellant, L. H. Doty, recovered a judgment against T. H. Thompson and the Kosciusko Industrial College in the sum of ninety-nine dollars and eighty-two cents and had the judgment duly enrolled in Attala county. The judgment debtors owned certain land in said county, upon which they had given to the C. C. Kelly Banking Company a deed of trust securing a certain indebtedness advanced by said Banking Company to the Kosciusko Industrial College.   There were standing trees upon the lands covered by the deed of trust, and ninety-six of these trees the judgment debtors severed from the soil

and conveyed to the appellee, Enterprise Timber Company. From the agreed statement of facts it appears that the timber was sold at private sale and at the instance of the C. C. Kelly Banking Company. The consideration for the sale, four-hundred and fifty dollars, was paid by appellee direct to the C. C. Kelly Banking Company, to be credited upon, and the sum was credited upon, the debt due said Banking Company, secured by said deed of trust. At the time this private sale was consummated, the judgment of appellant was of record and unpaid. Appellant then had an execution issued and levied upon the timber, and appellee filed its claimant's affidavit, claiming title derived through the private sale aforesaid. The issue was tried in the justice court, and on appeal to the circuit court a jury was waived, and the claimant's issue submitted to a special judge upon the pleadings and an agreed statement of facts. The trial court found in favor of the claimant, and from the judgment so entered appellant prosecutes this appeal.

The judgment has, among other things, the following recital:

"It appearing from the agreed statement of facts that the plaintiff in execution has failed to show that the logs levied on by the sheriff were subject to said execution, but that C. C. Kelly Banking Company held a prior lien thereon by virtue of a deed of trust executed by defendants, and that the proceeds of said logs were applied to the debt secured by the said deed of trust, and that plaintiff in execution failed to show that said logs brought an inadequate price."

Section 819, Code of 1906, clearly provides that an enrolled judgment becomes a lien upon and binds all the property of the defendant within the county where the judgment is so enrolled, and that this lien avails in favor of the judgment creditor "against a judgment debtor and all persons claiming the property under him." In construing a similar provision of the Code of 1857, our

court, in *Mitchell* v. *Wood,* 47 Miss. 231, long ago observed:

"It never could have been in the contemplation of the legislature to enable the judgment debtor to defeat the claim of his judgment creditor by alienation of his property after judgment. Such a construction as would produce such results ought not to be favored by the courts, unless the language of the law, according to well-settled principles of construction, requires it."

But no one in this case challenges the validity of appellant's judgment lien. The battle ground of this case is upon the alleged right of the senior lienholder, the C. C. Kelly Banking Company, to negotiate for and in the interest of the judgment debtor a private sale of the mortgaged property and thereby enable the purchaser to take the property freed of the junior lien. At the time appellee purchased the timber there were two liens upon the property, the senior lien evidenced by a deed of trust, and the junior lien evidenced by the enrolled judgment. The case is not one where the holder of the senior lien purchases the property. If such were the case, the main inquiry would then be whether there was a merger of the two estates—the lien and the equity of redemption. In the case before us the purchaser is a stranger, having no prior lien or claim upon the property of any kind. It is true that it purchased at the instance of the beneficiary in the deed of trust, but in purchasing it acted upon its own account, and its sole purpose evidently was to acquire the legal title. There is no stipulation that appellee is an innocent purchaser, and such a stipulation would be impossible, in view of our registry laws. Appellee is in the attitude simply of buying the property, upon which there is an outstanding judgment lien, and there is no law that we know of which denied to Mr. Doty his right to an execution and levy upon the property so transferred. Appellant has pursued his legal remedy, and appellee, the claimant, to prevail, must show that the

property was not subject to the execution. It is admitted that the judgment is valid, is unpaid, and is duly enrolled, and that execution was properly levied. Appellant, then, should have recovered as against the claimant, and the judgment entered by the trial court cannot in this proceeding be upheld. If the appellee has any rights, they are equitable in their nature, and the forum for its remedy is a court of equity.

We are not here called upon to define the rights of appellee, or to determine exactly what its rights and remedies might be. We discuss the question more for the purpose of disposing of appellee's equitable claims presented in this action. It would appear that the only right which appellee has would be the equitable right of having the C. C. Kelly Banking Company transfer to it the prior lien evidenced by the deed of trust, and to be subrogated to the lien thereof in preference to the junior lien of the judgment creditor. We are not to be understood as holding that this can be done. But this certainly is the utmost right appellee would have, and the enforcement of such right could only be had in a court of equity, where all the necessary parties are before the court and the proper issues presented. Our court, in the case of *Brooks v. Kelly,* 63 Miss. 616, expressly held that, where a part of land subject to a senior and junior mortgage was sold by the concurrent action of the senior mortgagee and owner and the purchase money applied to the mortgage debt, the transaction was a liquidation of the debt to the extent of the money so realized and applied, but that a junior mortgagee was not bound by such sale, if he did not assent to it. So in this case the judgment creditor, owner of the junior lien, is not bound by the private sale made at the instance of the senior lienholder. The owner of the deed of trust had its remedy for the foreclosure thereof, and it would be dangerous to the interests of the junior lienholder to say that the owner of the senior lien and the owner of the property could in

114 Miss.—56

any case by private agreements dispose of the property without giving the junior creditor his day in court. The junior creditor in proper cases would have the right to attack the validity of the senior lien, the extent of the indebtedness, the method of foreclosure, and at any sale under the first lien to boost the price at which the property must be sold.

In this case the C. C. Kelly Banking Company, holder of the senior lien, is not even a party to this litigation. "The right of subrogation, being equitable in its nature, cannot be enforced in proceedings to which those whose equities are affected are not parties. Creditors to whose rights a party seeks to be subrogated are necessary parties to an action to obtain such subrogation." 37 Cyc. 388.

The judgment of the learned circuit court will be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*