E. D. BROOKS *v.* C. D. KELLY, C. D. KELLY *v.* E. D. BROOKS ET AL., AND D. L. SWEATMAN *v.* E. D. BROOKS ET AL.

1. SALE OF LAND. *In chancery. Confirmation. Acts in pais of stranger to title.* One who has no title, legal or equitable, to a tract of land, cannot by acts *in pais* confirm the sale of any interest therein made under a decree in chancery; and even a purchaser of the equity of redemption thereof pending a suit by one claiming title through such sale is not affected by the acts *in pais* of such stranger to the title.

2. SAME. *Bill filed by purchaser before confirmation. Subsequent confirmation.* Where a purchaser of land at a sale under a decree in chancery, before confirmation of the sale, institutes a suit based upon his title acquired through such purchase, he can obtain no relief predicated on such title, even though he should by a supplemental bill establish a confirmation by the court subsequent to the filing of his original bill.

3. EXECUTION.  *Whether mortgagee's interest salable thereunder.*
   A mortgagee's interest in the mortgaged property is not subject to sale under an execution at law against him.

4. MORTGAGE.  *Where title taken as security for purchase-money paid.*
   One who at the request of another pays the purchase-money of land and takes the title to himself as security for his money, agreeing to convey the title to such other person upon payment of the money thus advanced, is a mortgagee, or trustee of the legal title with a charge on the land.

5. SAME.  *Sale of mortgaged property.  Liquidation of debt.*
   And where a part of such land is sold by the concurrent action of the mortgagee and the equitable owner, and the purchase-money thereof applied to the mortgage debt, such transaction is a liquidation of that debt to the extent of the money so realized and applied.

6. SAME.  *Sale of mortgaged property.  Rights of junior mortgagee.*
   But a junior mortgagee is not bound by such sale, if not assented to by him.

7. SAME.  *Of equitable interest.  Foreclosure-sale without confirmation.*
   And the *cestui que trust* in a deed of trust executed by the one equitably entitled to receive title to the land embraced in such deed, upon payment of a sum of money due the holder of the legal title, must be treated as a junior mortgagee, even after sale under the deed of trust and purchase by him, in a contest with the senior mortgagee or holder of the legal title.

8. SAME.  *Contest between junior and senior mortgagees.  Rents of mortgaged property.*
   A junior mortgagee, not being entitled to rents of the land mortgaged as against the mortgagor, cannot have such rents accruing while the land is in the possession of a senior mortgagee to whom the equity of redemption has been conveyed subsequently to the execution of the junior mortgage, applied to the debt due such senior mortgagee.

9. CHANCERY PRACTICE.  *Cross-bill on prospective complaint improper.  Relief on original bill.*
   Although, in a suit involving the equities of the complainant and several defendants in a tract of land, it may be improper and unnecessary to permit one of the defendants to maintain a cross-bill upon a prospective ground of complaint against a co-defendant, still the court, in granting relief on the original bill, should keep in view and enforce, as far as possible, the equities of all the parties.

APPEAL and CROSS-APPEALS from the Chancery Court of Montgomery County.

HON. R. W. WILLIAMSON, Chancellor.

J. D. Butler, having bought a tract of land which he was unable to pay for, procured Jackson Martin to pay the purchase-money thereof, fifteen hundred and thirty-four dollars and fifteen cents, and on the 18th of November, 1871, caused the legal title to the same to be conveyed to Martin by an absolute deed, in order to secure to Martin the repayment of the money thus advanced by him, with interest thereon at the rate of twelve per cent. per annum, it being verbally agreed between Martin and Butler that, upon such repayment, the former should convey the land to the latter. On the 12th of April, 1873, Butler caused another tract of land to be conveyed to Martin by a deed absolute in form, in consideration of one hundred dollars, advanced by the latter to the former to pay for this land, it being again agreed that, upon repayment of the one hundred dollars, with fifteen per cent. per annum interest thereon, the land should be conveyed by Martin to Butler. This last-mentioned tract of land Butler had verbally contracted for several months before the transaction with Martin in respect thereto.

On the 14th of March, 1873, Butler, being in possession of both tracts of land, executed a deed of trust on the same and some other property, to secure the payment of eight hundred and fifty dollars then due by him to J. C. Kelly & Co. (a mercantile firm composed of J. C. Kelly and C. D. Kelly), and a further indebtedness which he expected to incur to them during that year. On the 4th of January, 1874, Butler negotiated a sale of one hundred and sixty acres of the land to J. F. Shirley for twelve hundred and fifty dollars. Of this amount Shirley paid Martin six hundred dollars cash, and gave him his promissory note for six hundred and fifty dollars and interest, receiving from Martin a bond conditioned to make title upon payment of the notes. Martin gave Butler credit for twelve hundred and fifty dollars on account of this transaction with Shirley. Shirley went into possession of that part of the land bought by him, and Butler retained possession of the remainder.

On the 9th of October, 1876, J. C. Kelly & Co. filed a bill to

enforce their deed of trust, making Butler only a party defendant. On March 14, 1877, a decree was rendered in that case in favor of the complainants, under which, on May 7, 1877, three hundred and sixty-six acres of the land were sold, and were purchased by C. D. Kelly, one of the complainants, for the aggregate sum of fifty-four dollars. The commissioner of the court executed to Kelly a deed for the land bought by him, but the sale had not been confirmed when the bill in this case was filed.

On January 19, 1877, Martin claimed that after deducting the credit for the Shirley land, Butler owed him one thousand eight hundred and ninety-two dollars and ninety cents; and Butler induced C. D. Brooks to pay this amount to Martin, who then, at Butler's request, conveyed the land, except that part sold to Shirley, to Brooks, who was to hold the title as security for the repayment of the money advanced by him and paid to Martin. Butler, being in possession of the land conveyed to Brooks, received from him a bond for title, conditioned that the latter would make a conveyance to the former on the repayment of the one thousand eight hundred and ninety-two dollars and ninety cents, with interest.

C. D. Kelly, claiming by his purchase at the sale under the decree of foreclosure in favor of J. C. Kelly & Co., filed the bill in this case on the 23d of June, 1877, against Butler, Martin, Shirley, and Brooks, alleging that he was the legal and equitable owner of the land; that the conveyances to Martin were simply mortgages, the equities of redemption being in Butler; that the trust-deed to Kelly & Co. conveyed and bound Butler's equitable title; that Shirley, and subsequently Martin, purchased with notice of the trust-deed and subject to the incumbrance thereby imposed; and that Martin had been fully paid the debt for which the land was held by him. The prayer of the bill was that the complainant be permitted to redeem all the land embraced in the deed of trust to J. C. Kelly & Co. by payment of whatever sum of money, if any, might be found due to Brooks. A decree *pro confesso* was taken against Shirley, and all the other defendants answered.

While this suit was pending in 1878, the contract of sale be-

tween Shirley and Martin was rescinded. The former gave up the land and surrendered his bond for title ; the latter gave up his note of six hundred and fifty dollars, and paid Shirley, in addition, four hundred and one dollars and twenty-five cents for improvements he had made on the land. Thus Martin came into possession of one hundred and sixty acres of the land. Butler, being in possession of the other part of the land, Brooks, in order to acquire the same, paid him about five hundred dollars, and thereupon he transferred his possession to Brooks, surrendered his bond for title, and executed a quit-claim deed of his title to Brooks. On the 6th of August, 1881, the chancery court rendered a decree herein, from which Martin and Brooks appealed. This court remanded the case to the lower court. See 59 Miss. 652.

After the case had been returned to the court below the complainant, on the 12th of October, 1882, filed a supplemental bill, stating that at the time of his purchase of the land under the decree of foreclosure, he was the sole owner of the deed of trust and the debt thereby secured upon which that decree was based; that the sale to him was confirmed by the acts of the parties in interest before the filing of complainant's original bill, and was confirmed by the court after the filing thereof in March, 1881 ; and that Brooks had received, since his occupancy of the land obtained from Butler, rents sufficient to more than pay the debt for which he held the land. Martin and Brooks severally answered this supplemental bill, and the latter made his answer a cross-bill. The nature of Brooks' cross-bill and the proceedings therein are sufficiently indicated in the opinion of the court.

At the March term, 1885, of the chancery court D. L. Sweatman presented a petition stating that on the 7th of June, 1880, he purchased, as the property of C. D. Kelly, certain of the lands involved in this suit at a sheriff's sale under executions based upon judgments at law against C. D. Kelly and others, and received a deed to such lands from the sheriff, and that the supplemental bill of the complainant, C. D. Kelly, shows that he was the legal owner of the land at the time of the sale to the petitioner, and, therefore, the petitioner " prays that he be made a party complain-

ant in this suit as presented in said supplemental bill." The petition was granted, and Sweatman accordingly became a party to the suit.

In support of the allegation of the supplemental bill that the sale to Kelly was confirmed by the acts of the parties in interest, proof was adduced to show that Butler was present at the sale, and did not then make any objection to it, and has not since made any objection thereto.

Upon final hearing of the case the Chancellor rendered a decree, the nature and effect of which are sufficiently stated in the opinion of the court. From this decree Brooks, Kelly, and Sweatman severally appealed.

*Brantley & Smith,* for E. D. Brooks, appellant and cross-appellee.

We can find nothing in the pleadings or in the proof to sustain the decree. Brooks, having been substituted by his purchase to the rights of Martin, had a lien or mortgage prior in date to the lien of C. D. Kelly, and the decree should have provided that Brooks' claim on the land be paid first; the residue, if any, should then have been applied to the Kelly claim. Although the complainant *asked leave to redeem,* and although the record and proof show clearly that Brooks' lien on the land has priority over that of Kelly, yet the learned Chancellor in the court below grants relief in a way entirely different from that prayed for by complainant, and in a manner not authorized by the pleadings in the cause. The *allegata* and *probata* must correspond. The complainant can have no relief except upon the case as made by the bill, and the defendant is not compelled to meet a case made by the proof, but not stated in the *bill.* See George's Digest and authorities there referred to on page 863, § 204.

The proof to support the allegation as to confirmation by the parties in interest of the sale to Kelly, shows nothing but acquiescence on the part of Butler, and no act which would estop him to object to confirmation at the subsequent term of the court. It would be quite a departure from a long line of precedents in this court to hold that a sale by a commissioner has been confirmed by the acts of the parties simply because they *acquiesced in* or made

*no objection* to the sale before the next succeeding term of the court. And we submit this further fact that no opportunity has been afforded to the parties in interest to object to the sale because no motion has been made to have the sale confirmed. The order confirming the sale at the former trial of the cause in the court below was a nullity because made without any notice to the parties and not at the term succeeding the sale.

All the parties to the former suit, No. 190, mentioned in the pleadings in this cause are not before this court. A. B. Hubbard and one Thomas Henderson were parties to that suit, and are not before this court.

If this court should determine that the proof is sufficient to sustain Kelly's title to the land, then we submit the following reasons to show that the decree is erroneous and void, because if C. D. Kelly can maintain his suit at all under the pleadings in this cause his title was complete at the institution of this suit. *Brown* v. *Bank of Mississippi*, 2 Geo. 454. If C. D. Kelly's title or equity was complete at the institution of this suit, then his entire right, title, and interest to all the lands at present involved in this suit were divested by the sale under execution to D. L. Sweatman. The court below ignored D. L. Sweatman's claim to the land on the ground that Kelly's interest in the land as beneficiary in a mortgage could not be divested by a sale under execution, but, as we have stated, if Kelly had any title that is maintainable in this suit, he acquired it by virtue of his purchase at the commissioners' sale and that title could be divested by execution, hence the decree is void for want of jurisdiction, the complainant having no title at the date of the decree. It may be contended that Sweatman was a purchaser *pendente lite ;* that he had a right to let the suit proceed in the name of the original party. This may be the rule with reference to private conveyances or assignments made pending a suit, but when the title passes by operation of law, the purchaser is a *necessary* party. Story's Eq. Pl. 165, § 158 a. After Sweatman petitioned to be made a party and there was an order making him a party, Kelly had no further claim or interest, because they do not claim the land jointly. It is either Sweatman's or Kelly's, but cannot belong to both.

The court below thought it would be wrong under the circumstances in this case to require the defendant Brooks to account for the rents, and we think the court was correct in that view, for it would be very unjust and inequitable to charge Brooks with the rents unless he be first reimbursed the whole sum he had to pay out with *interest* in order to get the rents. Brooks paid Martin one thousand eight hundred and ninety dollars and paid Butler five hundred dollars, total, two thousand three hundred and ninety dollars, before he could get control of the rents and profits, and these sums should be refunded to Brooks with six per cent. interest if he should be required to account for the rents, and then the account should be stated according to the rule laid down in *Staton* v. *Bryant*, 55 Miss. 277, but we don't think Brooks is chargeable with the rents at all under the peculiar circumstances of this case.

Brooks is a *bona fide* purchaser for value, and is not chargeable with notice of Kelly's deed of trust, although it was recorded. *Harper* v. *Bibb & Hopkins*, 5 Geo. 472, and *Griffin* v. *Baker*, 50 Miss. 163.

Finally, upon the merits of this whole cause, laying aside for the present all legal objections, we don't think complainants are entitled to relief upon the principles of equity, for where equities are equal the court will not interfere. If this case is sustained Brooks will be damaged much worse than either of the complainants will be if it is dismissed. Kelly is insolvent and the proceeds of the suit will never benefit him; there is no earthly chance for Butler to be benefited in the result one way or the other.

Sweatman cannot be injured by a dismissal of the cause, for he tells you in his deposition that all of Kelly's indebtedness to him was secured by real estate and collateral notes, etc.

*J. S. Smith*, of counsel for Brooks, argued the case orally.

*Sweatman, Trotter & Trotter*, for C. D. Kelly, appellee and cross-appellant, and D. L. Sweatman, cross-appellant.

We claim that on the facts of this case Brooks is a mortgagee and that all his claim to the land-debt paid by him to Martin is repaid him with the interest thereon.

The Chancellor took a different view and accepted Brooks' state-

ment of the matter, as shown in his answer and deposition, and regarded him as a purchaser from Martin and bound to pay Kelly the balance of the one thousand eight hundred and ninety-two dollars purchase-money, after first satisfying that part of the indebtedness held by Martin, which constitutes a prior lien on the land. And Brooks not having done this, Kelly had an interest in the land to that extent, and he decreed accordingly.

The Chancellor thought the decree was the most equitable solution of this complicated suit. By it Brooks would get the advantages desired by him in the way of rents out of his trade for the land, and thus reimburse himself, as it were, for the excess over the land-debt proper paid to Martin.

The court adopted the idea that the deed held by Martin was a mortgage, and that it was foreclosed by agreement between him and Butler by a sale of the land to Brooks, and thus Brooks, according to his statement, was a vendee of the land.

Inasmuch as the court accepted Brooks' own statement, to wit, that he was a purchaser of the land, in rendering the decree, he should not be heard to complain now in this court.

But this is not true with Kelly. His theory that Brooks was merely a mortgagee was not accepted by the Chancellor. Kelly's theory was not accepted although (as we claim) the evidence shows that he (Brooks) was mortgagee, and it also shows that the mortgage-debt has been paid.

It matters not that Kelly's theory would entirely deprive Brooks of the land and give it to Kelly. All that Brooks ought to claim as against Kelly is the money on the land-debt. And this we will now proceed to show he has received.

Brooks received as rents for the land of which he has had possession two thousand and forty-four dollars and sixty-four cents.

Now, the amount due on the land-debt and taxes at the date of the deed from Martin to Brooks, as shown by the commissioner's report, was one thousand and eighty-one dollars and thirty-five cents. So we see at a glance that Brooks has been largely more than repaid the principal and interest of the land-debt. Hence

we respectfully submit that the chancery court should have so decided, and have given the land to Kelly.

We suppose the Chancellor thought that no proof was in the record to sustain the allegations of the petition by Sweatman, that he had not proven up his exhibits in either of his petitions, nor any of his allegations, and he therefore did not grant him any relief. If such were his conclusions, we think he was right, but for fear this court might take a different view we thought it best for him to join in the appeal of Kelly, and if Kelly was not entitled to the decree of this court that he would be.

In this connection we will volunteer this statement: That this claim of Kelly's is a security for an indebtedness of Kelly to Sweatman, that their interests are not conflicting, and that they fully understand each other.

Before concluding we will state that the proof shows that J. C. & C. D. Kelly were the owners of the deed of trust against Butler at the time of filing the foreclosure bill (case No. 190), and that when the land was sold the claim, or deed of trust, was owned by C. D. Kelly alone.

So C. D. Kelly was the sole owner of the claim or deed of trust and of the land so far as Butler and J. C. Kelly were concerned in the sale of the land ; and hence, in truth, all the parties in interest in the case of *J. C. & C. D. Kelly* v. *J. D. Butler et al.* are before the court in this suit, and this court can consider the sale as confirmed by the acts of the parties. In addition to this, the evidence shows that Butler was present when the land was sold and purchased by Kelly, and that he did not object then, and he has never objected since to this purchase by Kelly.

We ask this court to reverse the decree of the Chancellor and grant us a decree declaring that the land indebtedness to Brooks has been paid and decreeing the land to Kelly.

*Walter Trotter,* of counsel for Kelly and Sweatman, respectively, argued the case orally.

COOPER, C. J., delivered the opinion of the court.

The foreclosure sale under which the complainant purchased the

lands in controversy had not been confirmed by the court at the date of the institution of this proceeding, nor had there been confirmation *in pais* by persons authorized to ratify the sale. Before the day of sale Butler had parted with his entire interest in the lands, and thereafter could do no act prejudicial to the rights of his vendees. It is true that Brooks was a purchaser *pendente lite* of the equity of redemption, and because he was he took subject to whatever action should be taken in the suit, and upon confirmation by the court his title to the equity of redemption would be cut off, but he was not affected by any act of ratification *in pais* by Butler. The confirmation by the court of the sale under which Kelly bought since the institution of this suit cannot be considered for any purpose ; Kelly was not the owner of the land when he exhibited his bill, and because he was not he can have no relief on it predicated on that relation to the property. We approve the action of the Chancellor in treating the complainant as a mortgagee, and this, of course, disposes of the claim asserted by Sweatman.

As between the complainant, Kelly, and the defendants, Martin and Brooks, this condition of things exists : the defendants are senior mortgagees (or trustees of the legal title with a charge on the land) for the sum originally due from Butler to Martin, with legal interest thereon ; Kelly has a second mortgage upon the land for the sum due from Butler to Kelly & Co., and Brooks and Martin, subject to these two mortgages, are the owners of the equity of redemption in the land. Kelly is not bound by the sales made to Shirley and Brooks, for he never assented thereto, and his rights cannot be affected by contracts to which he was not a party. On the other hand, he cannot recover from Brooks and Martin the rents and profits of the land for the time they have been in possession. He was not entitled to them as against Butler while he was in possession of the land, and would not now be if he were yet the owner. He cannot, therefore, collect them as debts due to him from Brooks and Martin. Butler, having sold the equity of redemption, is not entitled to such rents as mortgagor, and because he is not they cannot be applied as credits on the debt which constitutes a prior charge on the land in favor of Brooks and Martin.

The Chancellor, therefore, rightly refused to direct an account to be stated of their value.   He also was right in directing an abatement of all interest after the respective sales by Butler to Shirley and Brooks on the sums for which the parcels of land were sold ; as between Butler and defendants, Martin and Brooks, each sale was a liquidation of the mortgage debt to the extent of the price at which the land was taken.

Accepting as correct the account stated in the court below (and no exceptions were taken to the items thereof), it appears that Martin and Brooks, as against Kelly, are entitled to a prior charge on the property for the principal and interest of the debt originally due by Butler to Martin, to wit, the sum of two thousand three hundred and thirty-one dollars and thirty-five cents ; Kelly, as second mortgagee, is then entitled to full payment of his mortgage debt, to wit, the sum of one thousand seven hundred and eighteen dollars, and the remainder of the proceeds of the sales of the lands should then be returned to Brooks and Martin, the owners.

The objections we find to the decree of the Chancellor are that it concludes Kelly by the sales made to Shirley and Brooks, to which sales he did not and has not assented; and also that it subjects Brooks' lands to sale for payment of the sum awarded to Kelly, and turns Brooks over to a new litigation with Martin for relief as to matters which can be settled in the present suit.

On a former appeal between Martin and Brooks we sustained a demurrer interposed by Martin to a cross-bill exhibited against him by Brooks, by which independent relief was sought on this state of facts.   When Brooks advanced for Butler the sum which was necessary to pay off Martin, Martin executed to him a warranty deed for the lands (except the lands which had been sold to Shirley), and because of this warranty, and for a prospective breach of it by the decree which he apprehended might be made in this suit, Brooks, by his cross-bill, sought to procure a decree over against his co-defendant, Martin, in this suit.   We then held, and properly, that a mere prospective danger of injury did not amount to a breach of warranty, and that in no event could that be made the subject of a cross-bill in this suit.   But it does not follow because

a cross-bill, improper in one respect and unnecessary in another, was not permitted to be exhibited the equities of all the parties should not be kept in view and enforced, as far as practicable, in granting relief on the original bill. This seems to have been appreciated by the learned Chancellor, who puts his decision directing the sale of the Brooks land and exonerating that of Martin, on the ground that, in the sale to Shirley, Martin did not get more than he was then entitled to receive. This is true, but it is also true that Kelly's right to subject the Shirley land was not at all impaired by this sale, that Shirley subsequently re-conveyed the land to Martin, and that this is a suit against each and every part of the whole body of land mortgaged by Butler, and this being the case, the equities of the defendant owners, as between themselves, ought to determine the method of sale. On this branch of the case the facts are that in 1874 Martin, with the consent of Butler, sold to Shirley one hundred and sixty acres of the land at the price of one thousand two hundred and fifty dollars, credited Butler with that sum, and afterward, by purchase from Butler, re-acquired the land. In 1877 Martin, claiming that Butler then owed him one thousand eight hundred and ninety dollars and ninety-two cents, received that sum from Brooks as payment by Butler, and conveyed by warranty deed the remainder of the land to Brooks, who was to hold the title as security for the money advanced for Butler. It now appears that of the sum so paid eight hundred and nine dollars and fifty-seven cents was usurious interest, which Martin had no right to demand or receive, and which has, therefore, been disallowed by the court. This should be refunded, if necessary, by Martin rather than paid again by Brooks. A proper result in this respect can be reached by apportioning the prior charge, two thousand three hundred and thirty-one dollars and thirty-five cents, to which Brooks and Martin are entitled, as follows : one thousand eight hundred and ninety dollars and ninety-two cents to Brooks, and four hundred and forty dollars and forty-three cents to Martin. This puts each party in the position he agreed to occupy—Martin with the Shirley land at one thousand two hundred and fifty dollars, of which he has

received eight hundred and nine dollars and fifty-seven cents in the collection of the usurious interest, and for the remainder of four hundred and forty dollars and forty-three cents he has a prior charge on it, and Brooks with the land conveyed to him, charged in his favor with the sum he advanced on it, one thousand eight hundred and ninety dollars and ninety-two cents. Neither Kelly nor Martin are required to refund to Brooks the sum he paid to Butler to obtain possession of the land held by him, nor are Kelly or Brooks required to make good to Martin the difference between one thousand two hundred and fifty dollars and the sum he paid to Shirley for his land.

It is necessary that both tracts of land shall be sold, for Kelly is entitled to nothing unless both tracts produce a sum in excess of the prior charge of two thousand three hundred and thirty-one dollars and thirty-five cents. And out of any surplus that may exist after the payment of that sum he is entitled to full payment of his debt. As the record now presents the case in condition for a final decree, and in view of the fact that this is the sixth appeal which has been taken in it, we will enter a final decree here.

The decree of the court below is affirmed on the appeal of D. L. Sweatman, and is reversed on the appeal and cross-appeals of Brooks and Kelly. The commissioner appointed by the court below is appointed commissioner to execute this decree. He will sell, according to law, all the lands described in the bill and claimed to be included in the Kelly mortgage, making separate sale of that owned by Brooks and that owned by Martin. Out of the proceeds of sale he will first pay the costs of executing this decree. If the aggregate amount then remaining in his hands shall not exceed the sum of two thousand three hundred and thirty-one dollars and thirty-five cents and interest thereon at six per cent. from October 15, 1885, he will return to each owner the amount realized from the sale of his land less one-half of the costs of executing this decree; if the aggregate amount shall exceed the said sum of two thousand three hundred and thirty-one dollars and thirty-five cents, and interest, he shall pay to the defendant Brooks, from the proceeds of the sale of his land the sum of one

thousand eight hundred and ninety dollars and ninety-two cents, with interest thereon at six per cent. per annum from October 15, 1885; he shall also in like manner pay to the defendant, Martin, the sum of four hundred and forty dollars and forty-three cents, with interest thereon at six per cent. per annum from October 15, 1885, from the proceeds of the sale of his land. If, after making the payments as directed to Brooks and Martin, there remain in his hands a sum not exceeding one thousand seven hundred and eighteen dollars and interest thereon at six per cent. per annum from October 15, 1885, he shall pay the same to C. D. Kelly.

If the sum, after paying Brooks and Martin as directed, exceeds the sum of one thousand seven hundred and eighteen dollars and interest, he shall, in paying the debt due to Kelly, first exhaust the fund realized from the sale of the Brooks land, and this being done, any balance shall be paid out of the other. After so paying the debt to Kelly he shall return to Martin any sum which shall remain arising from the sale of his land, and to Brooks any sum remaining from the sale of his land. One-half of the costs of this appeal and one-half of the costs of lower court (save only the costs of executing this decree) are directed to be paid by the complainant, Kelly, and one-fourth of the same costs by each of the defendants, Brooks and Martin. The costs decreed to be paid by each party respectively shall, if not otherwise satisfied, be paid out of any funds in the hands of the commissioner to which such party may be entitled under this decree. The commissioner, having executed this decree, shall make report of his proceedings to the chancery court from which this appeal is taken for its approval.

*Reversed and decree here.*