WILSFORD *et ux v.* JOHNSON *et al.**

[105 So. 736. .No. 25120.]

(Division A. Oct. 26, 1925.)

1. MORTGAGES. *Agreement for extension rescindable for nonperformance of agreement constituting consideration for extension.*

   Agreement for extension of time of payment of mortgage debt could be rescinded, and foreclosure had on the debt maturing under original terms, mortgagor having refused to carry out the provision of the agreement that, as consideration for the extension, he would execute a chattel mortgage as additional security.

2. MORTGAGES. *Mortgagee not entitled to rents.*

   A mortgagee is not entitled to the rents as against the mortgagor in the absence of agreement therefor.

3. LIENS. *Remedy of junior mortgagee paying interest on first mortgage is not equitable lien but merely subrogation to first mortgagee's rights.*

   A junior mortgagee, who, to prevent foreclosure of senior mortgage, pays interest accrued on such mortgage, which covered only the land, and not the rents and profits, is not thereby entitled to any equitable lien on the profits from the land, but any remedy that he has for such payment is by subrogation to rights of first mortgagee.

4. MORTGAGES. *Even additional damages for wrongful injunction against sale under mortgage would not authorize lien on rent.*

   Even if it be an exceptional case, warranting other damages, in addition to the statutory damages for delay occasioned by wrongful issuance of injunction staying sale under mortgage, this would not create or authorize the granting of a lien on the rents accruing during the delay.

---

*Headnotes 1. Mortgages, 27 Cyc., p. 1413 (Anno); 2. Mortgages, 27 Cyc., p. 1249; 3. Liens, 37 C. J., Section 27; 4. Mortgages, 27 Cyc., p. 1459 (Anno).

APPEAL from the chancery court of Sunflower county. HON. E. N. THOMAS, chancellor.

Suit by T. F. WILSFORD and wife against J. N. Johnson and others, for injunction with cross-bill by defendants. From an adverse decree, complainants appeal. Affirmed in part, and in part reversed and rendered.

*Chapman, Moody & Johnson,* for appellants.

The real parties in interest, as shown by the record, are T. F. Wilsford, as the owner of the land and personal property, and J. N. Johnson, his creditor, whose debt was secured by the deed of trust executed by the former to Quinn, as trustee. Primarily, of course, the duties and obligations of each are based on this instrument and the agreement of extension, heretofore mentioned, as a modification of that instrument. Therefore, the vital question is, was the agreement, heretofore copied in full, in effect, and binding on the parties hereto, when, in January, 1924, Quinn, as trustee, attempted to foreclose the deed of trust, the sale under which was enjoined. If it was, then the decree, from which the appeal is prosecuted, is erroneous. If it was *not* said decree is still erroneous.

I. *Necessary consequence if the agreement was in effect.* On December 3, 1923, all of the indebtedness, except ten thousand two hundred dollars, secured by the deed of trust executed by Wilsford and wife to Quinn, as trustee, for Johnson, was paid. By the terms of an extension agreement, the payment of such indebtedness was extended to be paid five thousand one hundred dollars with interest on ten thousand two hundred dollars on or before December 10, 1924, and five thousand one hundred dollars, with interest thereon, on or before December 10, 1925. If said agreement was in effect then the action of Quinn, as trustee, in proceeding to foreclose said deed of trust, was wrongful and the injunction, restraining said sale, was rightfully granted. This, of

course, is the necessary consequence, if as stated, said agreement was in effect and binding on the parties thereto.

The injunction, when sued out, was rightfully granted; for on that date, as stated, no part of the indebtedness secured by said deed of trust was then due; and as a consequence, the conditions of said deed of trust had not been breached. But, by the lapse of time, a portion of the indebtedness *was* due when the cause was tried. If the amount *then* due was paid, the deed of trust could not on that date be foreclosed. We say this because, if by the terms of said agreement the payment of said indebtedness has been extended, then there was no default on the part of Wilsford so long as said injunction was in effect. 27 Cyc. 1459, par. 7.

The said agreement, pursuant to which the payment of said indebtedness was extended, provided that as a consideration for such extension, Wilsford would execute a chattel deed of trust on certain property, therein described, to additionally secure the payment thereof. He failed, when requested, to execute such deed of trust. A default, on his part, could not, of course, at his instance, render the agreement void and of no effect. *Kent* v. *Stevenson,* 90 So. 241.

It is certain, if said agreement was in effect, that the indebtedness secured by said deed of trust was not then due and, as a matter of course, the conditions of said deed of trust had not been broken; and, when Quinn, as trustee, attempted to foreclose said deed of trust, the conditions thereof not having been broken, his action was wrongful, and the injunction, therefore sued out restraining a sale by him, was rightfully granted. If so, then the action of the lower court in holding that said injunction was wrongfully sued out, and the decree awarding damages against the appellants because of that was erroneous. See *Benedict* v. *Benedict,* 15 Hun. 307; 2 High, Inj., sec 1650; *Burroughs* v. *Jones et al,* 79 Miss. 214, 30 So. 605.

II.   *Necessary consequences if agreement was not in effect.*   One cannot, in the same suit, treat the contract as rescinded and rely on it.   The principle is so elementary that it should not be necessary to cite authority in support of it.   But see 13 C. J. 823, sec 683; *Harden* v. *Lang,* 36 S. E. (Ga.) 100; *Timmberman* v. *Stanley,* 1 L. R. A. (N. S.) (Ga.) 379.

If Johnson, because of the breach by Wilsford, had the right to rescind, and did rescind the agreement, such rescission abrogates the same, not partially but completely, and, after such an election to rescind, Johnson cannot insist on rights thereunder.

If the contract was rescinded by Johnson, both he and Wilsford were returned to their previously existing rights.   As the contract was, as to the extension, a modification of the deed of trust Johnson could, of course, resort to his rights thereunder, but he could not reap the benefits of the contract, rescinded by him and, at the same time and in the same suit, reap the benefits of the deed of trust which, as to the extension, was modified by the agreement. 13 C. J. 623, sec. 683, and cases cited in notes.

Therefore, even if it be assumed that the contract was not in effect, or rather had been rescinded, the decree must be reversed, as it gave Johnson the benefits based on the agreement and, as a consequence, deprived Wilsford of property, or his right to the use thereof, to which Johnson had no lien on or interest in.

Johnson elected to repudiate the agreement because of the breach thereof by Wilsford, yet when the original bill was filed, Johnson then filed a cross-bill in which he set up the agreement and claimed the benefits thereof. That is to say, he claimed an equitable lien on the agricultural products grown on said land for the year 1924. He based his claim on the agreement by Wilsford to execute a chattel deed of trust thereon.   But he charged that the land had been rented by Wilsford to one, N. L. Wise, for five thousand dollars.

Whether by the agreement Johnson was given a claim against and a lien on the rent agreed to be paid by Wise, it is unnecessary now to decide. The point is that if the agreement was *not* in effect as to Johnson it was not as to Wilsford; and if not, Johnson had no claim against, or lien on the rent agreed to be paid by Wise, evidenced by his rent note for five thousand dollars. Therefore, the decree perpetually enjoining Wilsford from negotiating transferring or assigning such rent note was clearly erroneous.

Furthermore, if the agreement was *not* in effect, then, as a matter of course, Johnson had no lien on the agricultural products growing out of the agreement by Wilsford, to execute a chattel deed of trust thereon.

*Everett & Foreman,* for appellants.

Johnson's right to the equitable lien, which was given him in the decree, arose under the contract of extension entered into between himself and Wilsford.

By this contract the payments mentioned in the trust deed, which is Exhibit A to the bill, were extended and the trust deed would mature a year later than the date mentioned in the trust deed. Johnson, however, claims that the contract was breached by Wilsford, in that Wilsford failed to renew the trust deed when he called upon him to renew the same; and for that reason he was entitled to foreclose under the original trust deed; and treating the contract as breached, he advertised the lands for sale. However, when the bill for the injunction was filed by Wilsford, Johnson answered and made his answer a cross bill and there he set up the fact that he was entitled to a lien on all of the crops grown by Wilsford for that year. The trust deed which was extended by the contract, covered all of the personal property owned by Wilsford and the only additional right which Johnson could acquire under a new trust, in accordance with the

contract, would be a lien on the crop for 1924. He had everything else.

We have no statute authorizing the mortgaging of crops before they are planted. Therefore, a trust deed executed by Wilsford to Johnson in December of 1923 on the crop for 1924, would convey nothing, except the title to the personal property which Johnson already had. *Sillers* v. *Lester,* 48 Miss. 513; *Cacey* v. *Stovall,* 50 Miss. 396; *White* v. *Thomas,* 52 Miss. 49; *Everman* v. *Robb,* 52 Miss. 653; *Butt* v. *Ellett,* 19 Wall (U. S. ) 544.

The rule above stated applies not only in Mississippi, but in Alabama, Arkansas, Dakota, Georgia, Illinois, Iowa, Kentucky, Maine, Massachusetts, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, South Carolina, Texas and Wisconsin.

So was it with Johnson; he had by the contract, an equitable mortgage on the crop as soon as it was *in esse,* and could get no better security thereon by the execution of a new trust deed at the time he requested it. However, our complaint is that Johnson treated the contract as breached and advertised under the prior mortage which had been extended by the contract, and, in the trial of the case, claimed the benefits of the contract, and the court, by the decree rendered, gave him both. It permitted him to eat the cake and keep it too. If he was entitled to foreclose his trust deed, then he was not entitled to the equitable lien which the court gave him; and if he was not entitled to foreclose under the original trust deed, then he was only entitled to his. equitable lien for the amount due that year, and, which the record shows, was in the hands of Mr. Chapman to be paid to him. Under either view of the case the decree should be reversed.

The damages proved are positive and not speculative. They flow from Johnson's unlawful act in advertising the place for sale, after he had contracted in writing and that properly recorded, to extend the terms of the

original trust deed for one year more than was provided in the trust deed, and the consideration for this contract of extension being thirteen thousand dollars paid him in the summer of 1923, when there was nothing due that year before December 1st.

Therefore, we submit that the decree should be reversed; that Wilsford, on the payment of what is now due, should maintain the injunction and that he should be allowed to recover damages, as shown by him, against Johnson for the wrongful advertisement of the lands, thereby defeating Wilsford in getting the place furnished for the year, and causing him to have to remove therefrom, and suffer the damages shown above to have been sustained.

*Forrest G. Cooper* and *Neill & Clark,* for appellees.

The first question is, whether or not Johnson had the right to consider the extension agreement rescinded. We must keep in mind the consideration for this agreement.

The court will observe that the instrument itself leaves no doubt that the condition placed upon the extension was the giving of the chattel trust deeds when requested, and that these deeds of trust must be paramount, and that Wilsford must work the land himself.

Here was a hopelessly insolvent party selling mortgaged property off the premises without applying it to the mortages; promising to execute the trust deed but failing to do so, declining to answer any letters; unable to be found; imperiling the whole security by his default on the long time interest; and about the middle of December offering to rent the property to N. L. Wise, in violation of his agreement.

The Union Central Life Insurance Company threatened to take drastic action on their security unless the interest be paid immediately, and Wilsford still declined to pay it. On December 22nd, Johnson, fifty-two days after the long-time note was due, in the face of threatened

action, was compelled to pay it. Wilsford did not pay him back until after the time for the foreclosure was past and the injunction suit started.

Counsel for the complainants strive hard in their pleadings and in the trial to prejudice this case by stating that Johnson was scheming to deprive Wilsford of his property, but they cannot escape the records, which show that Johnson advanced Wilsford ten thousand dollars, to make a crop on this place when he was under no necessity to do so; he waived his lien so as to permit Wilsford to place a thirty thousand dollar first lien ahead of him instead of a fifteen thousand dollar lien, although he lacked two thousand dollars of getting the proceeds of that loan. Wilsford has the nerve in the face of these facts to come into a court of equity and claim the benefit of that extension agreement, which he makes no pretense to have complied with, either before or since the foreclosure.

It appears to us elementary that when Wilsford admittedly failed and declined to comply with any part of this mutual, dependent contract, it gave Johnson the right to rescind the same. *Moak* v. *Bryant,* 51 *Miss.* 560; *Gullich* v. *Alford,* 61 Miss. 224; *Light Company* v. *The City of Jackson,* 73 Miss. 642, 19 So. 774; *Mortimer* v. *Hannah,* 82 Miss. 651, 35 So. 159. See also, Waterman's Specific Performance, sec. 456; Pomeroy's Equity Jurisprudence (2 Ed.), sec. 1408; *Reid* v. *Mix,* 63 Kan. 745, 66 Pac. 1021; 55 L. R. A, 706; *Keenan* v. *Brown,* 21 Vt. 86; *Rhymny Ry. B. & M. T. J. Ry.* 69 L. J. Ch. 813; *Mixer* v. *Williams,* 17 Vt. 457; *Md. Fertilizing and Mfg. Co.* v. *Lorentz,* 44 Md. 218. See especially *Worthington et al* v. *Gwin* (Ala.), 24 So. 739, 43 L. R. A. 382, and citations.

The appellants cite *Kent* v. *Stevenson,* 90 So. 241, in support of their statement that the defaults of Wilsford did not give the right to rescind . A casual reading of this case will show that it has no bearing upon the question under review. It is not in conflict with the views of our court in the cases above cited and merely decides

that a covenant in a deed which was for the grantor's benefit would not entitle the grantee to voluntarily make default and tender back the land and recover payments. In our case the contract to extend the payments was for Wilsford's benefit and was contingent upon Wilsford doing certain specific things before he could claim the benefit of the agreement.

II. *Equitable lien on rents.* But the attorneys for the appellants claim that if they concede the extension agreement had been rescinded the decree was erroneous on the far-fetched theory that the court treated the contract as rescinded and also relied on the contract. They have spun a beautiful theory upon this proposition and have cited some authorities with which we have no quarrel.

Appellants argument is that the decree was erroneous in giving Johnson an equitable lien on the rents for the year 1924. It is necessary, in order to present this proposition clearly, to go back a bit and show that the injunction obtained by the defendants, appellees here, restraining the transfer of the rent note given by Wilsford to Wise was proper.

When the insolvent Wilsford enjoined the foreclosure of the trust deed involving the land in question from which rents and profits were to accrue the title and right to which was in dispute it was entirely proper for the court to issue an injunction preventing the sale, or any change in the *status* of the rents from the land, which would interfere with the equitable adjustment of the rights of the parties upon final decree. It was upon this theory that the court granted the injunction on behalf of the appellees preventing Wilsford from making away with the rent note for the 1924 rents.

Injunction is the proper remedy to prevent the disposal or the sale of property in controversy where it is necessary to prevent irreparable injuries. And Johnson would have been caused irreparable injuries had the rent note been transferred because the record shows that

the balance of the security was insufficient to pay his debt. Now the appellants do not seem to question this position. They neither filed a motion to dissolve the injunction as to the rent note, nor made any suggestion of damages thereon, and they do not seriously challenge this position in either of their briefs. But they apparently argue that, conceding the correctness of the granting of the injunction as to the rent note, the court in its final decree had no right to impress an equitable lien on the rents in Johnson's favor. This untenable position arises out of a misconception of the facts and the pleadings or a failure to take into consideration all of the facts.

Moreover, the attorneys for appellants completely overlooked the fact that Wilsford, to whom the rent note was given, admitted in his testimony that Johnson was entitled to this rent money, and he went further and *agreed before the court in the presence of his own counsel that this rent money* should go to pay off Johnson's indebtedness, and yet they would argue before this court that in the face of this admission, and this solemn sworn agreement of Wilsford that the lower court erred in doing what Wilsford admitted was right and had agreed to be done.

Argued orally by *C. C. Moody,* for appellant, and *Forest G. Cooper,* and *S. D. Neill* for appellee.

Cook, J., delivered the opinion of the court.

The appellants, T. F. Wilsford and wife, executed a deed of trust on certain real and personal property to secure an indebtedness of twenty-three thousand seven hundred two dollars and forty-four cents due to the appellee J. N. Johnson; this deed of trust being subordinate to a prior mortgage indebtedness of fifteen thousand dollars. Thereafter the appellants negotiated a loan of thirty thousand dollars from the Union Central

Life Insurance Company, and in order to consummate this loan it became necessary to pay off the prior mortgage indebtedness of fifteen thousand dollars, and to have the appellee J. N. Johnson waive the lien of the deed of trust in his favor. To effectuate this there was paid, out of the proceeds of this thirty thousand dollar loan, the prior mortgage indebtedness, and also the sum of thirteen thousand dollars to the appellee J. N. Johnson upon the execution by him of a waiver whereby the priority of his deed of trust was subordinated to the one executed by appellants to said insurance company. In connection with this transaction, the appellant T. F. Wilsford and the appellee J. N. Johnson entered into a written agreement extending the payment of the balance of the indebtedness due Johnson by Wilsford. This agreement, after fixing the time and terms of these payments, further recited that—"As the consideration for the extension of the payment of the balance due as described in and secured by said deed of trust, the second party agrees that in addition to the lien in the said deed of trust, he, as the owner of said premises, will, when requested so to do, deliver to the first party a paramount and first chattel deed of trust, conveying in trust all of the crops, stock, and personal property on the above described premises for the year 1924, securing the amounts due for that year; and will, when requested so to do, execute a first and paramount deed of trust conveying in trust the crops, stock, and personal property on said premises, or used in making said crop for the year 1925 to secure the amounts above mentioned to be paid in 1925.

"It is further understood and agreed that the second party, during the year 1924 and 1925 agrees to work said premises in his own name."

Thereafter the appellant Wilsford failed and refused to execute the chattel deed of trust referred to in this extension agreement, and thereupon the appellee John-

son, conceiving that said agreement had been violated by Wilsford, repudiated said agreement, and, after the indebtedness matured under the terms of the original note, he caused the trustee named in the deed of trust to advertise the land and property covered thereby. After the advertisement and before the day fixed for the sale of this property, the appellants rented the same to one N. L. Wise for five thousand dollars to be paid out of the proceeds of the crop grown on said land for the year 1924, and thereupon filed this bill of complaint seeking to restrain the foreclosure of the deed of trust on the theory that, by virtue of the terms of said extension agreement, nothing was due.

The appellees answered the bill averring, in substance, that the extension agreement was conditioned upon Wilsford's compliance with the obligations thereof, viz.: The execution when requested of a paramount chattel mortgage as additional security for the payment of the balance due; that the extension agreement was abrogated by Wilsford's failure and refusal to perform the vital covenants on his part, after having been given a reasonable opportunity of so doing, and consequently, he was not entitled to the extension and the entire indebtedness was past due when the proprty was advertised for sale. They also made their answer a cross-bill containing, among others, the following averments:

"Your cross-complainant would further show that if the cross-defendants had not enjoined them from foreclosing said deed of trust, J. N. Johnson would either have received his indebtedness due by them or would himself have become the successful bidder and owner of said property and would thereby have become entitled to the rents, issues, and profits from said lands for the year 1924. Your cross-complainants would further show that under the terms of said extension agreement that cross-defendants had obligated themselves to work said land in the name of T. F. Wilsford and to execute a para-

mount and first chattel deed of trust on the 1924 crops on said lands and on all personal property thereon to secure the amounts due to J. N. Johnson on December 10, 1923, as aforesaid, but that prior to the advertisement of said land and prior to the injunction and the date of the foreclosure sale, cross-defendants had attempted to lease said lands to others and prior to the injunction and date of foreclosure sale had actually leased said land to N. L. Wise for five thousand dollars for the year 1925, thereby breaching their contract; that they had also, when notice was given to execute the deed of trust called for in said contract, declined, refused, and failed to execute the same, thereby further breaching their contract; that if said foreclosure had been made and J. N. Johnson had become the purchaser thereat, he would have been entitled to the rent or if the cross-defendants had carried out their contract as agreed, he would have been entitled to security on the said rents.

"Cross-complainants would further show that they are advised and believe and so state and charge that the cross-defendants are about to transfer, and assign said rent note for five thousand dollars to other parties for the purpose of defeating the rights of the said J. N. Johnson and if said transfer is made, irreparable harm and injury will be caused your cross-complainant, and unless this court will enjoin and restrain the said cross-defendants from negotiating, selling, transferring, or assigning said rent note, and any other rent notes which they or either of them named may have heretofore or hereafter received, for the year 1924, rent on said lands, and unless they and each of them are further restrained and enjoined from transferring, selling, or assigning to others the rent which they might receive for the use of said lands during the year 1924, irreparable harm and injury will be caused your cross-complainant J. N. Johnson."

The prayer of the cross-bill, in substance, is that the complainants, as cross-defendants, be enjoined from selling, negotiating, transferring, or assigning any note or lease contract for the rent of said land for the year 1924, and also from assigning the five thousand dollar rent note for that year executed by N. L. Wise; that the proceeds of any rent which the cross-defendants may receive, or be entitled to receive, be impounded as security for the indebtedness which the cross-defendants owed the cross-complainant J. N. Johnson, and that they be required to pay the same into court pending the final termination of the cause; that the injunction theretofore granted restraining the sale under the deed of trust be dissolved and damages awarded for the wrongful issuance of said injunction; that the court, by proper decree, impress an equitable lien on the 1924 crop to be produced on said land, to secure the payment to the said J. N. Johnson of the said indebtedness due him, and that a suitable person be appointed as receiver to collect, preserve, and dispose of enough of the said agricultural products to secure the payment of the amount due to J. N. Johnson by the cross-defendants.

The injunction prayed for in the cross-bill was granted, and upon the final hearing a decree was entered dissolving the injunction granted the complainants on the original bill, and awarding as damages for the wrongful issuance thereof, five per centum on the amount due on the indebtedness secured by the deed of trust, a sale under which had been enjoined. The decree further ordered that the injunction theretofore granted the appellees, as cross-complainants, be made perpetual; that the cross-complainant J. N. Johnson be granted an equitable lien on all of the agricultural products produced during the year 1924, on the lands in controversy, to the extent of five thousand dollars, which amount was found to be the rental value of said land for said year; and that J. L. Williams be appointed a receiver to collect such

rents and the proceeds of the sales of all of the agricultural products grown or produced on said lands during the year 1924, not to exceed five thousand dollars with interest thereon from the 1st day of November, 1924, and to apply such proceeds on the indebtedness secured by the deed of trust involved, sale under which had been enjoined by complainants.

It is not seriously contended, as indeed it cannot be upon this record, that the extension agreement was in effect at the time of the attempted foreclosure of the deed of trust from Wilsford to Johnson. This extension agreement provided that, as a consideration for such proposed extension, Wilsford would execute a chattel deed of trust on certain property therein described as additional security for the payment of the indebtedness. When requested so to do, he failed and refused to execute such a deed of trust, and, as a result of this breach of the conditions of the agreement, the appellee Johnson had the right to rescind, and did rescind, the agreement, and consequently, when the debt due the appellee matured under the terms of the original note, his right to foreclose the security for the payment of the same was clear. It follows that the action of the court below in dissolving the injunction restraining the sale under the deed of trust, and awarding the statutory damages for the wrongful issuance of the injunction, was correct.

The principal objection urged by the appellant against the decree is directed to the action of the court in restraining the collection or sale by the appellant of the five thousand dollar note for the 1924 rent, and granting to the appellee an equitable lien on all of the agricultural products produced during the year 1924 on the land covered by the deed of trust to the extent of the five thousand dollar rental value thereof.

It is somewhat difficult for us to determine upon what equitable doctrine the appellee asserts a lien upon the rents accruing from the lands conveyed by the deed of

trust during the delay in the foreclosure thereof occasioned by the wrongful issuance of the injunction, and, in order that the contentions of appellee may more clearly appear, we have set out in full the averments of the cross-bill in reference to the rent. While the extension agreement, executed by these parties, provided that the appellants would execute a lien in favor of appellee Johnson on the rents, issues, and profits of the land for the year 1924, it is admitted that appellee cannot and does not assert any rights under this agreement, since it was wholly abrogated. The deed of trust which the appellee was seeking to foreclose covered the land and certain personal property, but did not cover the rents, issues, or profits of the land, and it has been expressly held by this court that a mortgagee is not entitled to the rents of the land mortgaged as against the mortgagor. *Brooks* v. *Kelly,* 63 Miss. 616.

It appears from the record that the appellee, who was the junior mortgagee, in order to prevent a foreclosure of the senior incumbrance in favor of the Union Central Life Insurance Company, was compelled to pay the interest accrued on this senior incumbrance, and appellee contends that—"When Johnson, the junior incumbrancer, was compelled to pay off Wilsford's debt to the senior incumbrancer on lands upon which both held liens, that Johnson was entitled to an equitable lien on the profits from the land which he was compelled to protect after Wilsford defaulted."

This contention is not maintainable. By virtue of the deed of trust from Wilsford to the insurance company, this amount does constitute a lien on the land, but this deed of trust covers only the land, and not the rents or profits, and the appellee's remedy for the amount paid the insurance company, if any, is that of subrogation to the rights of the insurance company.

An examination of the averments of the cross-bill, which are hereinbefore set out, shows that the real ground

upon which the asserted right to an equitable lien is based is that, if the cross-defendants had not enjoined the foreclosure of the deed of trust the appellee Johnson would have received the value of the rents for the year 1924, if sold to a stranger, or he would have become the successful bidder and the owner of the land and would thereby have become entitled to the rents, issues, and profits from said land for the year 1924. In its final analysis, it seems to us that this amounts to a claim for damages in addition to the statutory damages allowed for the delay occasioned by the wrongful issuance of the injunction. In the case of *Williams* v. *Bank,* 71 Miss. 858, 16 So. 238, 42 Am. St. Rep. 503, this court said:

"There may be cases, exceptional in their circumstances, in which, by reason of change in the condition of the property or the expense incident to its care and preservation during the pendency of the injunction, other and different damages should be allowed. But when one claims and receives the damages allowed by the statute, he cannot receive, in addition thereto, other damages, to be ascertained by reference to other considerations. Those provided by the Code are exclusive when allowed."

In the case at bar the appellee has claimed and been allowed the statutory damages, and if it could be said that this is one of those "exceptional" cases which warrants the allowance of other and additional damages against the injunction bond, this would not create a lien against the rents accruing while the injunction was pending. We do not think the decree attempting to impress a lien upon the rents and products of the land for the year 1924 can be sustained under any view of the case. Consequently, the decree of the court below dissolving the original injunction and awarding the statutory damages will be affirmed, while the decree will be reversed in so far as it sustains the injunction prohibiting the transfer, collection, or sale of the five thousand dollar rent

note; and fixes a lien upon the said rent note and products of the land for the year 1924; and appoints a receiver to collect the rents and the proceeds of the sales of the agricultural products grown or produced on the lands during the year 1924; and a decree will be entered here dissolving the injunction prohibiting the transfer, sale or collection of said rent note by appellants.

Affirmed in part, and reversed in part, and decree here.

*Affirmed.*

*Reversed.*